or larger, not to exceed 30 minutes per side. Mr. Sweeney may proceed for the appellate. Good morning. Thank you. Good morning. You're ours. Good to see everybody. Please the court. I'm Tim Sweeney for Clarence Mack, the petitioner in this case. I'm here with my co-counsel, Mr. John Gibbons. If I could please reserve seven minutes for rebuttal, I'd appreciate that. Sounds good. Clarence Mack is on death row, as you know, for the 1991 aggravated murder of Peter Sinelli with the specification that he was the principal offender in an aggravated in the aggravated murder as a result of an aggravated robbery. Now, habeas, as we know, is for extreme malfunctions in the state criminal justice system. And you're honest, this is that case. The malfunctions we believe here are extreme and they're clear. And it's time for a court to correct them. It's very clear in our view. Why did it take so long? I can't get over how old this case is. And it seemed like it took a very long time for first federal habeas. Am I right about that? Well, there was really only one federal habeas, but there was the foray back to state court, your honor, when the Brady evidence came to light during the federal proceeding. And so it went back to state court where I think we were probably there for five years. And, you know, then it went back to federal court after those claims had been exhausted. And so it did take a long time. But, you know, back in 1996, the two judges, Judge Justice Wright of the Supreme Court and Justice Cook, now with this court, they saw what this court was, what this case was. This case was a situation where a correction needed to happen and it should have happened then. You know, this is a Brady claim. I want to talk about the Brady claim. I want to talk about the failure to permit the evidence of Carroll and Curtis. And I also want to talk about the fact that Mack isn't even the principal offender. I mean, that's the other thing about this case. But the rot of this starts with the Brady claim. You know, the prosecutor in this case had these Sinelli notes and they weren't turned over. These notes were in their file. There's no question about that. The notes were prepared. The first meeting that we had was the first meeting that we had. And the notes identify one man as being involved in this. They don't even mention Clarence Mack. I thought the notes aren't quite as clear as you'd suggest. I mean, they talk about a man, but then I thought the notes at another point do acknowledge two possibilities. Am I misremembering this? No, but it talks in the singular about a man and they identify a soul as the shooter. That's the critical thing, Your Honor. And they also identify Willis as an informer. And they reflect that Willis was given the name of one of the police officers. These were friends of Mr. Sinelli. The backdrop of this case is that Sinelli was a buddy of the Cleveland police chief, Kovacic. And they were working with this Willis guy. Willis is a scammer from top to bottom. And the problem with this case and the reason confidence, I believe, is undermined in the outcome is because the ability to contest the credibility of that star witness was seriously impaired by the failure to disclose this evidence. The Sinelli notes, I believe, Your Honor, is just the start of it. You got this notion of an informer. You got this notion of somebody who's working with the police. Well, informer, but also straight-up witness. Well, if you believe that. I don't know that he's a straight-up witness, Judge. I think this guy's a scammer. He can make his story- Well, what part of the Sinelli notes, what part of the Brady material proves he didn't see any of this? Well, I think the Holton crash report begins to help tell the story because the Holton report, remember, this is shortly after the crime. And you have witnesses who are not Tim Willis say, I see one person in this car crashing into a telephone pole, get out holding his nose, wearing a Chicago Bulls jacket. One person, the reasonable inference in terms of the timing is that that was Sol, and he was the only one in the car. And so the notion that Willis saw two people at Fairfax is fanciful. So what's your theory? Is your theory Mack was never there, never had any, I mean, Willis was such a scammer, Mack was just, he was in another place the whole time? Or you acknowledging he was part of this group and just he wasn't the shooter or he wasn't, what's your, if you're- Well, I mean- Scam is a pretty big word. And that means the whole thing is fiction. I'm trying to figure out where the fiction and nonfiction are when it comes to Mack. What Mack was at this, he was involved in some of this, no? Well, I mean, Mack has always denied any involvement. He had this alibi, he wasn't there. But even if you believe Willis, he's on the wrong side of the car, if he's there at all. I mean, that's the other aspect of this. Even if you believe Willis, Mack isn't on the side of the car where the killing happened. You know, but I want to go back because I don't think you have to believe Willis. I think- This is one thing that I was confused by. What's the reason Mack changes his theory about how he got the gun? I can't, I was trying to figure that. It didn't make sense. He has one theory about where he got it, some information that he changes. Explain that to me. Well, I don't know if you can explain it. I mean, these are people who are being interrogated in the county jail at a point in time where they've been taken into custody on these offenses. And he made some statements, alleged statements to some of these police officers. Now, did these statements actually occur? I don't know that Mack would ever even concede these statements occurred. Mack's position is he wasn't there. But even if you believe Willis and he wasn't there- What's his theory about how his gun gets there? Well, the theory of the gun was that he got the gun from Willis. I mean, that's what his theory of trial was, that this was something I obtained from Willis. And the eyewitnesses, I think, testify to that effect. This Johnny Scott, I believe, testified to that effect. And that's the other thing about this case, not seeing it with clear eyes through who Willis is. The fact that somebody had a gun that was used in this offense among these three or four or five guys doesn't mean they were the shooter of Peter Sinelli. I just think that's just a flawed reason. That's flawed reasoning that never really should have taken hold. The fact that Mack was arrested with the weapon that was allegedly the weapon used in the murder that actually fired the fatal shots. He was arrested two days later. I mean, these guns were like baseball gloves or like basketballs that guys share on the playground. That's how they were passed around. Every one of these things is a jury argument. I mean, I'm not belittling your point. I'm just saying they just sound like jury arguments. But he didn't tell the police that, right? I mean, and when he said he didn't identify Willis. No, he didn't. You're right at the time in his statements. No, but that was his defensive trial. You're right about that, Judge. But here's the thing. Some of these are jury arguments, but they can't be made without the suppressed evidence. I mean, the Holton guy, the single guy, one guy being in that car so shortly after the murder. That puts a lie to fair play. What was the time after the murder that the crash occurred? Within 45 minutes. It was boom, boom. It's a mile and a half, two miles away, give or take. Why didn't Willis contend he had the conversation or spoke with Mack and Sowell at the rec center? Well, that's the thing, Judge, because he spoke with Mack and Sowell, it seems, at every point in the case, according to Willis. But the rec center conversation happened at 645-ish, sometime that evening, that Martin Luther King evening. He claims he saw these guys at the rec center, and they pull up in the car. But that was after the crash. No, it would have had to have been before the crash, Judge, because the car was left there on Holton. The car was crashed on Holton and left there. And the person that got out of it was Sowell. He was the only one in it, and he got out of it. And Mancino didn't have this evidence, and he didn't have it. And he didn't have the evidence that the guy came up a couple minutes later, got in the car, the Holton car, the Cinelli vehicle, some stranger got in the car, moved it, took the keys, and left. That's why these Cinelli notes are important, because they point out they left the clip in the car. There are jury arguments that can be made, but they can't be made with clear eyes if you don't have the suppressed evidence. You didn't have the Cinelli notes. You didn't have this information about the Holton crash and the person going into the car and backing it away. These are jury arguments, but they can't be made without the suppressed evidence. And what's so offensive about this case is you have two pretty experienced lawyers here, Gibbons and me. Gibbons is much more so than me. If you can see him, he's getting old. But he's been in the courthouse, and you know when you look at this case the kind of nonsense that was going on in this case. And that's where you have to come to this deal, this Willis deal. Because if you're persuaded that there was this deal, if you're persuaded that we've established by clear evidence, by whatever standard, any standard, the court wants to apply, that there was a deal, an unspoken tacit agreement with Willis, Mack wins and he gets a new trial because they lied about that. We have to determine that the state court was clearly erroneous in finding there was no deal? That's, I think, what Judge Oliver said. You know, to me, it doesn't matter to me what standard you use, because we need any standard. We need any standard. Anybody that looks at this evidence, anybody, you tell this story to anybody. And it's an unspoken deal. Well, it's spoken or unspoken. But look at what happened. Isn't it hard under your any standard? How can you show it's clearly wrong when there's nothing to show? Your best evidence is, well, if you know the courthouse in your experience. No, it's not. Everyone understands what happened. That's not my best evidence. My best evidence is what happened. Here's what happened. You have these two trials.  Willis in July picks up, or in April, picks up this serious felony case. Okay? So this is April. This is three months after this crime. He meets with Bombeck in June. And Bombeck, he makes up his story. I shot because you shot. Okay. Yeah, Mack now is saying something. Mack is now allegedly saying, I shot because you shot. Again, putting him on the wrong side of the car. But nonetheless, so now in June, we're getting this new evidence from Willis in his meeting with Bombeck, the prosecutor, whose office is now prosecuting Willis. And, okay, so now you've got the new evidence. The evidence was never disclosed. You go to trial. Mack goes first. Willis does his duty. He testifies as he said he would testify. You go into Seoul, Seoul's immediately after. The day the Seoul trial ends, the day Bombeck has a phone call with the prosecutor in this Burgess case, this Willis felony, to tell him he thinks Willis didn't do it. Can I just make sure I'm understanding the chronology? You say the charge against Willis occurs three months later? Correct, in April. Doesn't he give a written statement soon after the murder? No, no, no, Your Honor. He gives a written statement soon after the murder, correct, which doesn't have this I shot because you shot lie that he made up in June. Yeah, yeah, but, I mean, this quite undermines the story you're trying to pass along. I don't know how it undermines it at all. I mean, I think. Go for it. Well, how do you how do you see that it undermines it? Maybe I just don't understand the question. Is it true that Willis embellished the story as a quid pro quo for the plea deal? I think Willis, I think as Michael Malley thinks, that Willis was involved and that Willis was panning off. He already fingered Mack before this alleged deal occurred. He fingered Mack only as being there, as being there with Soule. He never said he was a shooter. He never made any statements like that. That happened in June. And then I don't think I don't see how the timing can not be any more compelling. The day the Soule case goes to the jury, you have Bombeck making the phone call to the prosecutor in the Willis case, I want it continued. There's no reason that would happen unless there was a deal. That is a smoking gun of a deal. There is no question that that's what happened. I'm just wondering why there has to be a deal to make this argument. He comes to court and makes this statement out of the clear blue. And I think defense counsel knew that Willis was facing these charges. That's right. That's right. Why couldn't he develop that theory the same way you're developing it on appeal? He never mentioned this before. He picks up the charge in April, has a meeting with the prosecutor in June, and then all of a sudden he remembers this. Well, he didn't know, Your Honor. That's one of the Brady claims is that he didn't know that there was this meeting with the prosecutor in June, that they had had this sort of private meeting, that there had been this new development, this new tidbit of information released only to the prosecutor. Are you saying those prosecutor notes, the Brady materials, the prosecutor notes, right? Am I got it right? Yeah, Exhibit 35. And do those notes have the I shot because you shot? The notes don't, no. So I'm trying to figure out what's the Brady claim? The Brady claim. As to those notes. Well, the Brady claim isn't just the notes, Judge Sutton. It's the information. Brady doesn't just apply to documents. It also applies to information. And the prosecutor at that time had the information that Willis had just made up something. In a situation where he's talking to the prosecutor's office who's prosecuting him for this Burgess case that he just got out of jail on. And the notes do reflect, Exhibit 35, page number 21409, they talked about the case. They wrote down the trial date, August 5th. None of these notes were disclosed. The notes weren't disclosed. I'm trying to understand your theory. And the thing you wanted to emphasize was we'll call it the embellishment, the new statement, I shot because you shot. Now, that is in trial. That comes out at trial. But it's not in the notes. And I'm trying to figure out how the I shot because you shot and the notes create the smoking gun of, gosh, you snookered us. The smoking gun is the handwritten note the day the sole trial ends with Bombich calling and saying I want the case continued. That's the smoking gun. And that's in the 91 notes. No, no, no. The smoking gun happens on the day the sole trial ends. Those notes, that's the smoking gun. The prosecutor's meeting in June, the information that was disclosed then, that is Brady. The information that Willis is embellishing at that point in time is Brady material, whether it's in the notes or not. It's irrelevant whether it's in the notes. It still had to be disclosed. There's no exclusion from the Brady obligation just because Bombich didn't write it down. He knew it. He knew what had happened in that meeting. He knew. He found out at trial. I'm sorry. You got the information at trial when he testified. I don't think you did, Judge White. You didn't know there had been this meeting. You didn't know they had talked about the trial date. You didn't know that he had written down the lawyer's name and the judge's name. You didn't know any of that. All you knew is that you now have this new detail at trial. You never had a chance to use any of this before then. And it's not just that. It's the Holton report. It's the Cinelli notes. It's this episode. And, you know, why would anyone defend this prosecutor? This is a prosecutor who told the court in the hearing and the evidence you're hearing in front of the federal judge, you know, my obligation in Brady is just to turn over what I know about. You know, that's outrageous that a prosecutor in a capital case is making that kind of a statement. Doesn't believe he has any, didn't realize he had a duty to know what the police know. Didn't realize he had a duty to find out whether these Cinelli notes existed and to turn them over. Clearly didn't have any conception that he had to let the defense know that there was this at least tacit deal with this Willis con artist who he was going to, you know, have the prosecutor back off his case the day the trial ends. I mean, that to me is a smoking gun. You don't see that. I don't think this court has ever seen that before where you got once a capital murder prosecution ends, you got a prosecutor calling up a different prosecutor about a case he knows zippo about and saying I don't think he did it. I want to continue. The only explanation for that is that it's a deal. And it's not just Sweeney saying that. You know, don't forget that Michael Malley said that, too. Michael Malley is an experienced detective. He walked into federal court, a federal court for goodness sake, and held up his hand and swore under oath and said, from what I saw, this guy got a deal, this Willis character. This is when the government's trying to prosecute Willis and they're trying to detain him. Michael Malley was ready and willing to go in and tell the federal judge, the federal magistrate judge, Pat Hemon, here's what happened in the Willis case, here's what happened in that Cinelli case. He turned to evidence and he got a deal. It snowed. The fact that, you know, the grass was green the night before and you wake up and there's snow on the ground, you know it snowed. You didn't have to be in the room with Bombeck and Willis in June to know that it snowed. When you read those notes, those notes in the prosecution file of the Willis-Burgess prosecution and you see that unambiguous statement of Bombeck saying I want this case continued, that's sleazy and that's a deal. And that should have been disclosed. And any court to this point I don't think has given fair consideration to these facts. They've allowed Bombeck to say I didn't have a deal. I don't care what Bombeck says. No court should care what Bombeck says. He has no credibility on this. This is the guy who kept the Cinelli notes in his file and didn't turn them over. This is the guy that wouldn't tell Paul about the Holton crash report. This is the guy that didn't disclose that Willis came in and was changing his story a month before trial. This is the guy that made that phone call, you know, the day after the case ends. That's just, your honors, that's a deal and it was apparent and it should be apparent to everybody. And whatever the standard is, I believe, we believe, we meet it because this case, as I said at the outset, is about these breakdowns, these extreme malfunctions in the criminal justice system. And you see that here and that brings us into this notion of Carol Mancino and Curtis Mack, you know. And before I move to that, though. And I think this is important. You know, in habeas you're always saying, okay, did you unreasonably apply clearly established law? Did you, you know, did you unreasonably determine the facts? You know, I think this is Kyle's, you know, where you have these snitches who come in and whose story is manipulated and you're unable to really poke into it because critical evidence withheld. That's the Kyle's case. In Kyle's, it was some guy named Beanie. That's a Harry Connick prosecution. In the Weary case, it's a guy named Sam Scott. This court had that Freddie McNeil case where it was a guy named Robert Ruschinsky, you know, and the inability to cross-examine that key snitch witness. Here you have so much evidence, I believe, your honors, if you take all these little pieces of Brady and you're able to cobble them together and challenge this witness, the jury, it would have made a difference. It would have, I think your confidence in this conviction should be undermined. At least your confidence in whether the death sentence in this case is appropriate should be undermined by the fact that this evidence was not made available. It would have mattered to juries in any courtroom when you have this kind of stuff, when it's one witness, you know, because this is a one witness case. That's the other thing about this. I mean, Freddie McNeil lost in the Sixth Circuit two to one because there were other witnesses. There were these four or five children that saw what happened. You don't have that here. It's all Tim Willis. Well, you have the gun. But, Judge, the gun is there. That also swirls from Willis. You know, Willis is the one that set these guys up to be arrested. Mack's position was that Willis set them up with the gun. You know, it's not just Mack. That's what O'Malley went in and told the federal court in 1996. I think he supplied the guns. Willis, I think, supplied the guns. It's not just us talking about this. I mean, looking at the evidence in this case, it all swirled from one guy, which brings us to that other aspect of this case, the denial of Carol Mancino and Curtis Mack. And it brings us to that five to two Supreme Court decision. I think that's remarkable. You know, you get that five to two decision. I know you're aware of that. And that's Justice Wright and that's Justice Cook. The one thing about evidence rulings, though, is, you know, they're state law rulings. Right. So, you know, it's not just a question of whether they got the state law evidence. Right. I mean, or what we would have done, even as appellate judges under state law, it has to be so egregious that lack of due process, fair trial.  Yeah. Isn't it, though? Isn't it? I mean, isn't that this? What's your best case? Let's go with Curtis Mack. Let's start with that one. What's your best case? Well, again, you know, you got a one witness case and you got Curtis Mack saying Tim Willis told me I did it. You know, that's a pretty that's pretty compelling evidence. I mean, this is it goes to Willis's bias and it goes to Willis's potential culpability and it plays into what was the state theory for not having Curtis Mack testify? The state's theory? Yeah. In other words, what did the state trial judge? What was the gist of the state court's ruling as to why Curtis Mack didn't have to testify or shouldn't be? I think it was it was reliance on state law evidence principles. I know. I'm asking what they were. I'm saying what they were. That. They hadn't laid a foundation, I think, to. I forget at this point. Because when he was. When he was on the stand, they didn't ask. Whether. Willis, I guess, when Willis was on the stand, they didn't ask him whether he made the statement to to Mac. Yeah, because Curtis Mack did testify. He was permitted to testify and he did testify about some things. But when it got to this, what did Tim Willis say to you? I think they treated it as hearsay. They barred it as hearsay. The judge, Paul Mattia, who became a federal judge, wouldn't let it in. And he wouldn't let it in. I think it's hearsay under state law's interpretation of hearsay. With Carol Mancino, I think it was more like you're talking about, Judge White, the failure to ask Tim Willis when he testified. Did you say these things to Carol? But I think with respect to Curtis, it was pretty much just straight hearsay. You don't get it in. And that's where Kennedy of justice. Right. In the Chamber's case, it seemed like the excluded evidence was trustworthy. And here, I mean, both of the witnesses had a bias, didn't they? Well, you know, Judge Bush, I think every witness in this case had a bias. You know, Tim Willis's bias was unmistakably outrageous. And I think we know it now with this Burgess stuff. And he was biased, too. And judges, I think, can't allow hearsay rules and state evidence rules to be mechanistically applied to deny due process, particularly in capital cases. These are capital cases where these principles principally come into play. Chambers and some of the others. Chambers, maybe it was, I don't know, maybe you could argue it was more reliable. I don't know. I think Curtis Mack's testimony is reliable. But that's really for juries to decide. They should have had the opportunity to decide that, I believe, in this case. And the failure to permit that evidence has to leave the court with a really strong suspicion. Grave doubt is the standard, you know, the standard that has to be applied, the Breck standard. I think we need it here on that particular claim, just as we need the Brady standard on the Brady claim. I see my time is up. And I don't want to, I do want to save time, because I know Chuck Willis is going to have some good things to say. I'm going to want to respond to them. So thank you very much. Thank you, Mr. Sweeney. Mr. Willis. Yes, may it please the court. Charles Willey, assistant attorney general for the warden. Your honors, the Supreme Court observed that the standard for obtaining relief under the ADPA is a very difficult one to meet. Mr. Willey, could we, let's just start where he left off. I just want to make sure I'm understanding. And if you're not sure, don't worry about it. I just want to make sure I'm understanding what the theory was for not admitting those two pieces of evidence. Or there's the, yes, those two witnesses. I'm still not quite clear what happened. I know that's the key point in the case, but I wouldn't mind just sorting that out. Yes, I'd be glad to, your honor. What happened was that the Ohio Supreme Court basically said that with respect to three of the proffered statements, a proper foundation was not laid because under the governing Ohio rule. We're talking about both witnesses? Yes. Both witnesses, it was a lack of foundation. Okay, keep going. Yes. Now, there was one instance where, with respect to Carol Mancino, that the Supreme Court said, well, it was ambiguous. Perhaps a foundation might have been laid, but it was not prejudicial because in that particular instance, it was not, I think the claim was that Willis said that I didn't call the police. And the Ohio Supreme Court said, well, you know, even if that were so, that's not prejudicial. Now, the first instance where Carol Mancino would have testified that Mack told her, I don't really think, or Willis told her, I don't think real clearance really could have done this. That came out of trial. So, the Ohio Supreme Court said that that was not prejudicial because Willis did, he conceded that. He said that, yeah, I did say that to Carol Mancino. Now, with respect to the alleged confession to Curtis Mack, I would point out that the Ohio Supreme Court decided these questions, but they did note that Mack was arguing that these errors deprived him of a fair trial. Now, the Ohio Supreme Court didn't explicitly say, and we conclude that this didn't deprive him of a fair trial, but in essence, they were well aware that he was not just claiming that these were evidentiary errors, but he did say he claimed that they deprived him of a fair trial. Now, with respect to Curtis Mack's testimony, if one looks at Chambers v. Mississippi, and that was the case that was relied upon in the appellant's brief, it's very plain that that case is very thoroughly distinguishable. The statements in that case, one of them was made under oath by a person who was a suspect in the case that he had actually done the crime. He had also said the same thing to numerous other witnesses. So, in that case, the reliability of the statement in question was indisputable. There's no other way to say it. Now, if we go to the idea that, well, what about the other, what about the notes, what about the other Brady material? Well, I do believe that it is significant in this case that this is a very unusual case, because here you have the Brady claim, you have an evidentiary hearing in federal court, which precedes the evidentiary hearing in state court, in which all the evidence that was available in federal court was also made available in state court. Now, you have the situation where, indeed, if the district judge, and the district judge made findings based on that evidence that he heard, and if you have that, then you also have comes into play the idea that those findings have to be shown to be clearly erroneous. So, that's even a higher, I mean, that's pretty high standard to meet as well. Now, take the Cinelli notes. The district court thoroughly examined these notes, and the district court found, first, that it was significant that Willis went to the police the very same day that he talked to the family, and the district court found that what he told the police then was consistent with his trial testimony. So, the idea that somehow Willis... What about the I shot because you shot? Yes, Your Honor. So, that's not consistent. What's interesting? Well, the district court found that, true, this comment was not in any of the previous statements by Willis, but the defense at trial knew that. They knew that this was a new statement, and they had the opportunity to cross examine him about that. And the district court found that the trial defense attorney cross examined. He knew about this inconsistency because it hadn't been in any of the prior witnesses prior statements, and the district court reasoned that had counsel really felt that he needed more time to explore this issue, he would have asked. And, of course, in terms of, say, a Brady type claim, it's pretty well established that unless there's an extremely unusual circumstances, the delayed disclosure of something is not a violation of Brady versus Maryland. Oh, go ahead. That was different from trial at trial than what happened in the initial statements to this finale to the police was this fingering of Mac in particular. I mean, why wasn't Mac entitled to that under Brady is these initial statements, which did not say anything about Mac to show that as evidence that the that that, you know, Willis is making kind of peanuts up later. Yes, your honor. That's a good question. And the district court made some very thorough findings on that. The district court found that essentially the statements that are recorded by the family, their notes did not indicate unambiguously that soul was the only shooter is a matter of fact that they did. They weren't unambiguous and that they didn't have Mac anywhere in them. Yes, yes. But this very same day, Willis calls the police and he names Mac as a shooter too. So, you have. I thought the same he did not name that immediately. First, the first meeting with the police. He named Matt. Yes. Yes, your honor. That was found by the district court. Now, the district court found that although only one name was mentioned, apparently to the to the Sinelli's, I mean, now we're dealing with their notes. Right. What they put down the district court found that although only one name was mentioned, it did not rule out. Certainly that there was another person involved, another shooter. As a matter of fact, the soul did fire a shot, but the district court found that when Willis contacted the police, he named Mac as a participant in the crime. Right. No, this was, it was, this was well, yeah, it was January 23rd. That's right. Because that was the meeting date. I'm sorry. Just to follow up, was there something in the notes from January 23rd of the police that indicated. That Mac was named. Yes, yes. As a matter of fact, it was the police reports, the district court found that the police reports on this were consistent with what Willis said was Willis naming Mac as a participant as a shooter participant in the crime. I mean, that was found by the district. But what I'm asking is the underlying notes that they had Mac. Oh, yes, yes, yes. Right. It was based on the district court found based on examining the notes. That is, if you'll, the district court was very thorough finding citing the notes, citing the record. The bottom line was the district court found that there really wasn't any change with respect to the basic events. There was really no drastic change in Willis's statements from the very, from the very beginning that he was very his statements were consistent with what occurred to trial as to the basic events that took place. Now, with respect to the, the deal. I want you to get to that, but I just want to make sure I'm getting one thing. We're talking about a Brady claim. And one of the things that you could call an embellishment is this line where Willis says, you know, back tells him I shot because he shot. How would I get the significance of that? I realized it came out in trial. What where is that in the Brady claim? That's what I'm trying to figure out. Like, where is that? Where is there the notes that have that statement and they weren't disclosed? That's what I can't figure out. To my understanding, your honor, it was agreed that this, this, this statement was never referenced in any notes. Why is that a Brady claim is what I'm trying to figure out. Well, it's not, but the argument was, I think, Mr. Sweeney made the same argument here that the idea itself, the fact itself that Willis had never said this before. And now comes up with this new, this goes, this goes to the deal plea deal point. In other words, only because there's now. Okay. So now go where you were going. Go go talk about the plea deal. Okay, I got it. Let's take a look at the evidence here. And this. This is when he talks a lot about former officer O'Malley, who said he thought there was a deal yet. Officer O'Malley later testified that he said, I really was not involved. In the investigation of Mr. I really didn't know whether or not he was a suspect and I don't, I can't say as we, I testify in federal court. I cannot say that he was a suspect in the, that he, that he was a suspect and there was a deal. Okay. Now, if you look at the deal evidence, the district court examined the case files, the district court just didn't rely on the prosecutor's testimony that there was no deal. He examined the case files for that prosecution, the burglary prosecution of Mr Burgess. The case files indicate in two places that the case was dropped because Mr Burgess died of unrelated causes to the crime. Pretty powerful evidence that timing of that death in connection with dropping the charges. This was all this was before the charges were. Well, put it this way. The notes indicate as an explanation for why the charges were dropped is because the victim died. I mean, that the notes indicate that in the case file and the case about the Burgess burglary. Okay. So the detectives notes with the case number and the detectives call to the other prosecutor happened well before the death. I have to say, I'm not sure exactly. I can't recall specifically what the testimony was, but the, the, the, the ultimate evidence, other evidence showed that this did not factor in that there was, there was really no secret deal here. There was many, as a matter of fact, the whole, the case was reviewed by superintendent for the police and he concluded that that the reason why the charge was dropped because it was the victim died. I mean, that was so whatever inference 1 can draw from the prosecutor's call. And let's just say, okay, an inference can be drawn that perhaps the prosecutor desired to to have had a nefarious purpose. Whatever inferences can be drawn is, is overwhelmingly shown not to be so by the evidence and here was continued right after the prosecutor's call. Wasn't it? I can't recall your honor what the records how the record speaks to that. But I can say this is that again. There was there was lots and lots of evidence that the district court had that there was a reasonable explanation for why the charges against Willis or dropped and the reasonable explanation being primarily that without the victim. There was no, there was no case. And again, I suppose I have to say, I am perhaps harping on the evidentiary or the standards we have here, but drawing an inference from 1, perhaps. At most unexplained call that there is a nefarious deal here is a pretty long inference and it's certainly not sufficient to overcome to meet the burden of showing clear and convincing evidence that the district, the state court was wrong. And also any clear error by the district court for finding that there was no evidence that there was insufficient evidence of the deal. It's true that. And indeed, the state court consider that with the argument was made to the state court. Well, you have to imply a deal here. And the state court opinion says that it says that the government offer any reason for why the call was made. I mean, we know the call was made, right? So, explain why the call was made to. Continue the case, presumably, and according to the, you know, the Mac that it was, it was for the purpose of. You know, keeping the case alive until later, and then obviously the person dies and that gives a reason to not not prosecute, but but. Could there not still agreement that this could that that in exchange for putting this case on hold. You will testify in this case. And I apologize your honor for not recalling that testimony. I'm sure the prosecutor addressed it, but I just can't recall what he said. I will go back and also point out that again. Willis's statements and his cooperation and his statements far preceded any supposed deal with respect to these other unrelated charges. So, it just seemed to me that again, that, that if your theory is somehow as this being propounded here that Willis made up his testimony, because he was getting some consideration. Well, you would have to say right from the very beginning. When he identifies, he reports, you know, 2 days after the murder to the police that he has some information and he gives that information pretty far stretch that that had that his testimony really had anything to do with these other charges. Remind me remind me what he says in that written statement right away about Mac. He says that they were both involved in the shooting. Okay, there was as it turned out, so he doesn't identify he doesn't identify. Who who fired the fatal shots. As best I recall, he, he said that they both shot. I don't know. As a matter of fact, I don't know. Really. No one knew who fired the fatal shot. I suppose until they actually did the autopsy. Forensics that's right. And as far as his statement was consistent with what how he described what what they what he was told happened, you know, was was consistent with his testimony. So, there was nothing in there as again as a district court found there was really nothing in the notes, which really ruled out the possibility that Mac fired the fatal shot or that soul. Did the notes say that there were 2 people. Yes, yes, my recollection is it made clear there was 2 people involved. And the idea was, isn't it? Wouldn't it be a little more accurate to characterize the notes is at 1 point. Referring to 1 person, and then another point referring to 2. I mean, isn't that what's confusing about them? Yes. Yes, yes, that's that's that's an excellent point. I mean, I'm just, I'm just saying your answer to judge white. Didn't ring totally true that there is parts of the notes, which make it seem like they're talking about 1 person. But then later on, they seem to acknowledge to. That's yes, if I didn't get that impression and I apologize, because that really isn't. And I think that's what the district court found to that's that's that's the case. If the notes were, you know, ambiguous, they certainly didn't rule out. It certainly can't be construed as a reflecting a statement by Willis that only 1 person was involved and it was sold. But, I mean, the nature of a trial is that. Defense counsel uses everything he or she has. To create reasonable, but that. And it seems to me that. The 1st statement. Not mentioning. And being critical as to whether there was 1. Person or 2. And the whole testimony. That. The cars crashed and there's 1 person in it. Together. If I may address that, your honor, just briefly, the district court found. That 1st, the prosecutor didn't list. In his witness list. The people who reported. Seeing the smash car. Okay, so that was reported.  That fits nowhere, at least with me. I mean. The prosecution can put the witness names in there. Without any explanation and claim that it is complied with. I mean, there's a famous. It's 1 factor, your honor, but the district court didn't rely on that. Totally. The district court then found that these people, whatever they had, whatever they saw was not at all. Indicative of evidence. As to who actually fired the failed shot. That these were all inferences that were drawn by. Well, the fact that he, they saw this person push in the nature of a trial. We asked the jury to draw inferences. Yes, that is correct. Your honor. But at the same time, and looking at a post trial in the. In the framework of a claim of a violation of Brady versus Maryland. Then the materiality standard doesn't is not met simply because an inference might have been drawn from the allegedly withheld evidence. It must be more than that. It must be to show that there's a reasonable probability that had this evidence been disclosed. The jury would have not found Mr. Mac guilty and guard. I would point out, your honor. That the forensic evidence in this case was compelling that forensic evidence that linking. Mr. Mac to the murder weapon. In his possession. You know, 3 day or when he was arrested, you know, the 2nd day after the murder. That's very compelling evidence. That is evidence that he was the shooter. Now, it's you also have to take into account what his statements were to the police. He said, well, I actually, I, I, I got this gun the day after the murder, but he didn't know who he got it from. Now, he couldn't he didn't it was an unknown person. Well, the person who testified that he got it from Willis. I was known to Curtis Mac. I think I believe it was Curtis Max sister's boyfriend. So, it's not credible that he would not know if that were the case. And he also then said when he, when he was told that the murder weapon that his gun was the murder weapon. He said, oh, well, I gave it to somebody named D. Before the murder. That's that's how it must have happened. So, you have 2 statements here, which seriously undermine any credible claim. And I understand your honor. I understand that, you know, a defendant is under no obligation to testify. I understand that. But in this, in this regard, if, indeed, it was credible that he got the gun from from from Willis the next day. Wouldn't he have said that to the police? I mean, he would say I got it from Willis. Well, and that certainly goes to counsel. I'm sorry. That certainly goes against his arguments. But by your logic, Germany was the other shooter, not so right? Because he's the one who had the other gun.  No, your honor. The forensics showed that still actually fired 1 of the shots. 1 of the shots that were fired was linked to the gun that soul. So, there was no question that soul fired a shot. I thought that Germany had 1 of the guns. Germany had a gun, too. But my understanding of the record is, is that forensically a bullet fired by from the gun that soul had was fired at the scene. So, if you add these, put all these things together, again, in the framework of a claimed violation of Brady versus Maryland, it comes down to this idea of linking the murder weapon to Mr. Mack's possession is very powerful. I mean, I'm reminded of Mario Puzo's classic novel where the capital regime is instructing the young Corleone about being an assassin. And he says, now, wherever you do, drop the gun. Witnesses we can fix, but we can't fix if they catch you with the gun. And this has got to be powerful evidence to a jury that, indeed, he was linked to the weapon that fired, that he had the weapon that fired the failed shot. In terms of the other, incidentally, the Holcomb, the testimony about the crash really wasn't all that developed in the brief. I mean, it was mentioned in passing. And I understand that these claims have to be looked at collectively. I mean, I understand that completely. You have to look collectively at whatever evidence was allegedly suppressed. But, again, there was really no attempt to refute the findings that were made by the district judge as to why the district judge did not think that this evidence was very persuasive. And I would ask the court, again, this was an excellent analysis by the district court who had the benefit of hearing testimony and then reviewing it later after another hearing in state court. The district court thoroughly analyzed and the findings that the district court made that supplemented the state court's findings were very, very well documented. I would ask the court to look at and see the district judge. He looked at the police records. He looked at the notes. He looked at the testimony. He thoroughly examined what was available. And he came to the conclusion that this information, even the information that was not turned over, would not meet the materiality standard and that the state court was reasonable in coming to that conclusion. Does the court have any further questions about the evidence? I'd be happy to address any. In terms of the Carol Mancino testimony and Mac, I would say, in addition, that, again, whenever one can say about this information, these statements that Willis supposedly said to Carol Mancino, it could not possibly have had a reasonable person would conclude that they couldn't have deprived Mr. Mac of a fair trial, especially in light of when you think that one of them, in fact, was actually brought out. And also one looks at the transcript here. The cross examination to Mr. Willis was very thorough and there was much available to trial counsel to cross examine Willis on. And he did. And nevertheless, it's reasonable to conclude that this didn't anything else would not have mattered because the evidence was sound and trial counsel did his best. Excuse me. How could the statement. To the effect of don't don't you realize I did it or something like that. How could that not be material. In terms of, I mean, Curtis Mac saying that, well, it's not material in this sense is that it's not reliable and it was properly excluded as evidence. It was not. There's no reliability. His bias was his reason for bias was obvious and. Under clearly established federal law for an evident rolling to be. I'm sorry that I'm not following you. The witness was there. Clarence. Who would have not the hardest is Curtis. His cousin who would have been under oath. And saying that this is what Willis said to me. Yeah, I'm not sure why that is in admissible. Well, we know this, we know the Supreme Court found that it was not admissible because there's no foundation was laid. He was not asked. The witness was not asked. Well, did you tell Curtis Mac this, did you say to Curtis Mac that you really, really killed Mr. So no found that that foundation was not laid, but then also on the whole idea of due process, regardless of what the evidentiary ruling was in the state court. And that's not really an issue because the court court court court doesn't review the correctness of state law decisions or state evidentiary rulings. But aside from that, one must say that is it is it is it reasonable to find that this state, this supposed statement that was made by Willis to Curtis Mac. Was so reliable, so, so compelling. That it would have that the jury would have disregarded all the other evidence that pointed to to Clarence and also would have ignored that there was no other evidence really except argument. That that Willis was even there. A reasonable court could easily say, no, that couldn't possibly have deprived. Deprived Clarence Mac of the fair trial. And again, that's what we're saying is not a matter of admissibility or. Whether it should have been in whether I mean, using any standard, but that it didn't prejudice. Depriving the fundamental serious. Yes, your honor. I mean, I think I think we're good. Let's let's hear Mr. Sweeney's rebuttal. Thank you. Mr. You got to turn your mic on. Okay, there we go. Thank you. I appreciate that. You know, the things that Carol wasn't permitted to say included. I can make my story fit into anything anyone wants to hear. Boy, that was the theme of the case, you know, the disallowance of Carol Mancino's testimony was critical. It was prejudicial. It was your point. Judge White is correct. It was Germany that was arrested with the gun. That was then attributed to Seoul. That was Germany. He was caught with that gun in the same roundup that Willis orchestrated on the 23rd of January. Mac had one gun, Germany had the other, and they attributed Germany's gun to Seoul through who? Through Willis. Willis' statement, allegedly, when he first saw these guys on the 21st, where he heard one of them say, come on, we got to go. You can use my nine. Because remember, they went to Willis' house to get guns. And Willis supposedly said, I don't have guns. And then they left. And there was the statement made by one of the men to the effect, come on, we got to leave Seoul. You can use my nine. So that's how they attributed the gun Germany was arrested with to Seoul. You know, there's no other evidence of it other than Willis. What do you make of the point? You know, the theory I heard you say earlier was that Willis gives the murder weapon to Mac. That's the point. That's the setup point. But what's hard to understand about that is why Mac just doesn't say that. That just seems like such an obvious point. He knows who Willis is. He can very easily say, yeah, sure, I have the murder weapon, but that's because Willis gave it to me last night or whatever. I mean, I think that may have been what he was trying to say, but he didn't use the names. I don't know the answer to that, Judge. He didn't testify. And, you know, maybe there was an issue there that could have been developed differently. But the fact of the matter is, and this was Michael Malley that believed this based on his review of this evidence. Make a point about Michael Malley. I know Mr. Woolley did diminish Michael Malley and tried to distance himself from his statements that he made in federal court. But when we had him testify in the federal hearing, he stood behind his statements. He said, I would say the same thing today. He was 100 percent behind what he said in 1996. He stood behind it. He said in federal court under oath in our hearing, which was also presented to the state court, that I stand behind this, that there was a deal in my view. That's important. Can I just, the deal, given the clearly erroneous point, you know, okay, fine. There's a coherent theory of a deal. But there's a coherent theory that it's dropped because the victim died. I mean, that's... That's not a coherent theory. Judge, can I please stop you there and try to encourage you not to see this as a coherent theory, because it is not coherent. It's incoherent. There's no coherent theory. The deal happened when the call was made. The payoff occurred right then. That was on July, whatever, July with the last gift souls trial, July 30th. It's in the notes, July 30th. That's when it happened. It's documented. It's Rick Bombeck, the prosecutor that made that call. He called. He knew nothing, nothing about the Burgess cases. He admitted. He had no knowledge. Listen, I appreciate your convictions. They're terrific. It's not as obvious to me. Isn't it? No, I'm just trying to make the point in a clearly erroneous setting where Judge Oliver looked at all of this stuff. Why can't you say there's an equally plausible explanation, which is the victim died? I don't understand why that's... The victim did die, but the victim died three months later. The deal happened in July. The fact that he died is just an afterthought. That has nothing to do with the deal. The deal, Judge, occurred on July 30th. That's when it happened. The victim didn't die until October. I mean, he died in October. And the prosecutor was considering whether the death was the result of this offense. Because remember, Tim Willis beat the hell out of this Burgess guy. He was 83 years old. Burgess knew him. And Willis was wearing a ski mask. And Burgess pulled up his mask and said, Tim. And so he picked him out of a lineup a few weeks later. So you have Burgess's testimony in a lineup, picking Tim Willis. He knew Tim Willis. The death, they could have prosecuted this case. Did Zalbeck give any explanation for that call? Yeah, he tried to make the argument that I just didn't think he did it. I think that Mack and his people were somehow involved in this Burgess thing. And through the testimony, it became clear that he had no idea. None of the facts of the Burgess case. The facts I just recited to you, he was unaware of. That Burgess picked Willis out of a lineup. That Burgess knew Willis. He was familiar with him. Someone who had done work at his house before. He had this lineup where he points at him. He beat the hell out of this guy and stole a gun. He died in part because of these injuries that were sustained in that beating. It's a convenient fact that after the fact, they were able to attribute the dismissal of the case to the death. But the deal happened three months earlier when they called off the dogs on that prosecution, which was supposed to begin on August 5th. The phone call Zalbeck made was July 30th. They called off the dogs. He was skating. That case was over. The fact that he died, okay, you know, that happened, but that was three months later, Your Honor. The sequence of this is unmistakable. This was a deal. And there is... I mean, just so you understand where I'm coming from, the deal point seems to have a problem at the beginning and a problem at the end. The problem at the beginning is that before any crime and possibility of the deal, he gets these statements and he claims Max did. And at the end, there's a separate coherent reason for dropping the charge. And then you add to it that we had the district court look at all of this and listen to the witnesses. And we're supposed to say that's clearly erroneous on top of reviewing of a state court. So anyway, I'm not saying don't push back. I'm just saying what it is I'm struggling with. Well, again, I just think that I would ask you to, I encourage you to look at it maybe through our eyes, because the way we see it, this was an obvious deal. It was one of those situations where you wake up and the snow's on the ground and you have O'Malley coming to the same conclusion, which I think corroborates our point. I just want to make the final point because I know I'm running out of time or may have out of time. But to the issue of what did Willis say in those first reports? He never identified Mac as a shooter. He always in those first reports, the Cinelli notes, the first police reports that day, he identified Sol as the shooter and the only shooter. In the Cinelli family notes, there's just a reference later after all these singular references to the man. Just to be clear, but he acknowledges Mac's there. He acknowledges Mac and Germany are also involved. But as to the shooter, he identified only Sol. And that's why Judge Sutton, to your issue with the deal, the I shot because you shot nonsense didn't happen until post-Burgess, the June meeting with Bombeck. But we have to connect that to a Brady claim. It is a Brady claim. Because the Brady claim is the deal. That's the deal. Well, the Brady claim is the deal, but so too Judge Sutton. I ask you to think of it from our perspective here. If Bombeck knows this statement has been made, the mere fact that he didn't write it down doesn't deprive it of its Brady status. The I shot because you shot lie should have been disclosed even if it wasn't written down. The fact that Bombeck didn't put it in its notes doesn't make it any less a Brady violation for not telling Paul. Hey, what's the evidence that he knew that statement? He testified. Yeah, I learned it at that meeting. He testified in the federal hearing. I learned it at that meeting in June. He admitted that. But it wasn't the defense had that information at trial. But Judge, here's what they didn't have. They didn't know about the June meeting. They didn't know that they had been talking about the Willis-Burgess case because that's in Rick Bombeck's notes. He wrote down the judge's name and the trial date and they talked about it. You know, those are the critical facts. Paul didn't know that. He didn't know there had been this June meeting where they talked about the Burgess case, where they met privately to prepare. You know, and then and then all of a sudden you got this new statement. I shot because you shot. You know, Rick Bombeck admitted he learned that you would have learned it at that meeting. That's I don't think that's a that's a point that's in dispute. And so I think you can connect that. I do think this is a. I think go ahead, Judge Bush question. So you're arguing that I shot because you shot statement came as a result of the agreement. That's my inference. My inference is this is all this is all this is all connived. This is all connived. They needed this guy. Don't forget. You have this note from Carmen Marino. Don't let Tim Willis get scared off. You know, and they weren't going to let Tim Willis get scared off. They were going to do whatever it took to make sure they got a prosecution in this case. And they crossed the line here. There was, I believe, extreme malfunctions here. They crossed the line. And I don't think the court should let them get away with it. All right. Thank you, Mr. Sweeney. I don't want to cut you off, but if you have one point that you really wanted to make, go for it. I appreciate the court's indulgence. I appreciate this argument and I have nothing else to say. Counselor, you're saying. The Brady information then was really the meeting. I think the meeting and what happened at the meeting, the embellishment is ongoing five months later and it's ongoing in the context of a meeting where they're talking about a prosecution. That the same office is now undertaking against this key witness. Again, a one witness case. Anything that goes at that one witness, I believe that one witness. There's no other evidence without what without Willis. There really isn't. There's no other evidence without Willis. And that's what Judge Wright said in 1996. And gosh, darn it. He was right. He was right about that. Justice Cook was, too. Hey, thank you very much, Mr. Sweeney. Thank you, Mr. Willie. We really appreciate the excellent briefs and oral argument. They're extremely helpful to us. So thank you. And case will be submitted and once you can turn court.